ORIGINAL

Of Counsel:
HISAKA YOSHIDA & COSGROVE

STEVEN K. HISAKA        1773-0
GAIL Y. COSGROVE        3011-0
KUNIO KUWABE            4798-0
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 3000
Honolulu, Hawaii 96813
Telephone No.: (808) 523-0451
Facsimile No.: (808) 524-0422
E-Mail: shisaka@objectionsustained.com
gcosgrove@objectionsustained.com
kkuwabe@objectionsustained.com

Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

DEC 1 5 2006

at 1o o'clock and 4 min. ___M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CADE OYADOMORI and RANAE AWAKUNI, on behalf of themselves) and all others similarly situated in the State of Hawaii,) <br><br> Plaintiffs, <br><br> vs. <br><br> CYPRESS SEMICONDUCTOR CORPORATION; FUJITSU AMERICA, INC.; FUJITSU LIMITED, INC.; HITACHI AMERICA LTD.; HITACHI LTD.; HYNIX SEMICONDUCTOR AMERICA INC.; HYNIX SEMICONDUCTOR INC.; MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD., d/b/a PANASONIC; SEMICONDUCTOR COMPANY, MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD.; MICRON SEMICONDUCTOR PRODUCTS, INC., d/b/a CRUCIAL TECHNOLOGY; MICRON TECHNOLOGY, INC.; MITSUBISHI ELECTRIC & ELECTRONICS USA, INC.; MITSUBISHI ELECTRIC CORPORATION; NEC ELECTRONICS | CIVIL NO. CV06 00666 JMS KSC <br> (Class Action Complaint) <br><br> CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS; EXHIBIT "A" |

SEALED
BY ORDER OF THE COURT

AMERICA, INC.; NEC ELECTRONICS )
CORPORATION; RENESAS TECHNOLOGY )
AMERICA, INC.; RENESAS )
TECHNOLOGY CORP.; SAMSUNG )
ELECTRONICS COMPANY LTD.; )
SAMSUNG SEMICONDUCTOR, INC.; )
SONY CORPORATION; SONY )
CORPORATION OF AMERICA; SONY )
ELECTRONICS, INC.; TOSHIBA )
AMERICA CORPORATION; TOSHIBA )
AMERICA ELECTRONIC COMPONENTS; )
TOSHIBA CORPORATION; and JOHN )
DOE 1 through 100; )
 )
                Defendants. )
_____ )

## CLASS ACTION COMPLAINT

      Plaintiffs, CADE OYADOMORI and RANAE AWAKUNI, by and

through their attorneys, HISAKA YOSHIDA & COSGROVE, bring this

civil action on behalf of themselves and all others similarly

situated in the State of Hawaii, for damages and declaratory

relief against the above named Defendants.  Plaintiffs, upon

personal knowledge as to their own acts and status, and upon

information and belief as to all other matters, alleges the

following:

## INTRODUCTION

      1.  This case arises out of a long-running conspiracy,

beginning no later than January 1, 1998 and continuing until

present (the "Class Period"), among Defendants and their Co-

Conspirators, with the purpose and effect of fixing prices,

allocating market share, and committing other unlawful practices designed to inflate the prices of Static Random Access Memory chips ("SRAM") and products containing SRAM sold indirectly to Plaintiffs and other purchasers in Hawaii.  Plaintiffs bring this Class Action pursuant to the statutes of Hawaii, specifically, H.R.S. §§ 480-1, *et seq.*

      2.    Defendants and their Co-conspirators have formed an international cartel to illegally restrict competition in the SRAM market, targeting and severely burdening consumers in Hawaii.  The conspiracy has existed at least during the period from January 1, 1998 to the present, and has affected billions of dollars of commerce for products commonly found in households and businesses throughout the United States, including Hawaii. Defendants' conspiracy has included communications and meetings in which Defendants agreed to eliminate competition and fix the prices and allocate markets for SRAM.

      3.    The charged combination, and conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendants and their Co-Conspirators, the substantial terms of which were to fix, stabilize, and maintain prices, allocate markets and customers, and to coordinate price increases of SRAM in Hawaii.

4.   The acts in furtherance of the conspiracy by Defendants have included, upon information and belief, the following wrongful conduct and horizontal agreements:

    (a)   participating in meetings and conversations in which Defendants and their Co-Conspirators discussed and agreed to prices for SRAM;

    (b)   participating in meetings and conversations in which Defendants and their Co-Conspirators allocated markets and customers for SRAM;

    (c)   participating in meetings and conversations in which Defendants and their Co-Conspirators discussed and agreed to refrain from engaging in competitive bidding, or to submit complementary and non-competitive bids, for particular contracts to supply SRAM and products containing SRAM to various consumers;

    (d)   exchanged sales and customer information for the purposes of monitoring and enforcing adherence to the agreements reached;

    (e)   issuing price announcements, price quotations, and general price increases in accordance with the pricing and market allocation agreements reached; and

    (f)   facilitating, effectuating, implementing, monitoring, and concealing the contract, combination, and conspiracy to raise the prices of SRAM sold.

## JURISDICTION AND VENUE

5.   Plaintiffs bring this Class Action pursuant to the antitrust, deceptive and unfair trade practices, and consumer protection statues of Hawaii, specifically, H.R.S. §§ 480-1, *et seq.*

6. This Complaint is also filed under Section 16 of the Clayton Act, 15 U.S.C. § 26 to enjoin Defendants, and their officers, agents, employees, or representatives from engaging in the unlawful contract, combination, and conspiracy in restraint of trade or commerce of SRAM or products containing SRAM.

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds $5,000,000 exclusive of interest and costs when the claims of individual class members are aggregated, and is between citizens of different states. Venue is proper in the United States District Court for the District of Hawaii pursuant to 15 U.S.C. §15 and 22 and 28 U.S.C. § 1391, as the Defendant(s) reside, transact business or are found within this District, and/or a substantial part of the events giving rise to the Class Members' claims arose in this District.

8. This Court also has subject matter jurisdiction over the Plaintiffs' Clayton Act claims, 15 U.S.C. § 26, under 28 U.S.C. § 1331 and, because their claims arise from the same case or controversy as their injunctive claims, under 28 U.S.C. §1367.

9. Without limiting the generality of the foregoing, Defendants (directly or through agents who were at the time acting with actual and/or apparent authority and within the scope of such authority) have:

5

(a) transacted business in Hawaii;

(b) contracted to supply or obtain services or goods in Hawaii;

(c) availed themselves intentionally of the benefits of doing business in Hawaii;

(d) produced, promoted, sold, marketed, and/or distributed their products or services in Hawaii and, thereby, have purposefully profited from their access to markets in Hawaii;

(e) caused tortious damage by act or omission in Hawaii;

(f) caused tortious damage in Hawaii by acts or omissions committed outside such jurisdiction while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such Hawaii, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in Hawaii;

(g) committed acts and omissions which Defendants knew or should have known would cause damage (and, in fact, did cause damage) in Hawaii to Plaintiffs and members of the Class while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdiction;

(h) engaged in a conspiracy with others doing business in Hawaii that caused tortious damage in Hawaii; and

(i) otherwise had the requisite minimum contacts with Hawaii such that, under the circumstances, it is fair and reasonable to require Defendants to come to this Court to defend this action.

6

10. Plaintiff CADE OYADOMORI is a resident of Hawaii. In addition, a substantial part of the trade and commerce, as well as the arrangement, contract, agreement, trust, combination, conspiracy, unfair or deceptive practices, and/or uniform and common course of conduct giving rise to Plaintiff's claims, occurred within Hawaii, including, among other things, the indirect sale of SRAM and products containing SRAM to Plaintiff and other members of the Class at supra-competitive prices.

11. Plaintiff RANAE AWAKUNI is a resident of Hawaii. In addition, a substantial part of the trade and commerce, as well as the arrangement, contract, agreement, trust, combination, conspiracy, unfair or deceptive practices, and/or uniform and common course of conduct giving rise to Plaintiff's claims, occurred within Hawaii, including, among other things, the indirect sale of SRAM and products containing SRAM to Plaintiff and other members of the Class at supra-competitive prices.

12. As a result of the manufacture, distribution, delivery and sale of Defendants' products to indirect purchasers within Hawaii, directly or through their subsidiaries, affiliates or agents, Defendants obtained the benefits of the laws of Hawaii and the markets of Hawaii for their products.

7

## PARTIES

A. Plaintiffs

13. Plaintiff CADE OYADOMORI is a resident of Hawaii who has indirectly purchased SRAM and or products containing SRAM manufactured by one or more Defendants during the relevant conspiracy period.

14. Plaintiff RANAE AWAKUNI is a resident of Hawaii who has indirectly purchased SRAM and or products containing SRAM manufactured by one or more Defendants during the relevant conspiracy period.

B. Defendants

*CYPRESS*

15. Defendant Cypress Semiconductor Corporation ("Cypress") is incorporated in California with its principal place of business at 3939 North First Street, San Jose, California. Defendant Cypress produced, promoted, sold, marketed, and/or distributed SRAM to consumers throughout the United States, including Hawaii, during the Class Period.

*FUJITSU*

16. Defendant Fujitsu Limited, Inc. is a Japan corporation with its principal place of business at Shiodome City Center 1-5-2 Higashi Shimbashi, Minato-ku, Tokyo, 105-7123 Japan. Defendant Fujitsu Limited Inc. produced, promoted, sold,

8

marketed, and/or distributed SRAM to consumers throughout the United States, including Hawaii, during the Class Period.

17. Defendant Fujitsu America, Inc., a wholly owned subsidiary of Defendant Fujitsu Limited, Inc., is incorporated in California with its principal place of business at 1250 Arques Ave., M/S 124 Sunnyvale, California 94085. Defendant Fujitsu America, Inc. produced, promoted, sold, marketed, and/or distributed SRAM to consumers throughout the United States, including Hawaii, during the Class Period. Defendants Fujitsu America, Inc. and Fujitsu Limited, Inc. are referred to collectively as "Fujitsu".

*HITACHI*

18. Defendant Hitachi, Ltd. is a Japanese corporation with its principal place of business at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo 100-8280 Japan. Hitachi, Ltd. produced, promoted, sold, marketed, and/or distributed SRAM to consumers throughout the United States, including Hawaii, during the Class Period.

19. Defendant Hitachi America, Ltd. is a wholly owned subsidiary of Hitachi, Ltd. and is incorporated in New York with its principal place of business at 50 Prospect Avenue, Tarrytown, New York 10591. Defendant Hitachi America, Ltd. produced, promoted, sold, marketed, and/or distributed SRAM to consumers

throughout the United States, including Hawaii, during the Class Period. Defendants Hitachi America, Ltd. and Hitachi, Ltd. are referred to collectively as "Hitachi".

*HYNIX*

20. Defendant Hynix Semiconductor, Inc. is a South Korean corporation with its principal place of business at SAN 136-1, Ami-Ri Bubal-eub, Ichon-si, Kyongki-do, South Korea. Defendant Hynix Semiconductor, Inc. produced, promoted, sold, marketed, and/or distributed SRAM to consumers throughout the United States, including Hawaii, during the Class Period.

21. Defendant Hynix Semiconductor America, Inc. is a wholly owned subsidiary of Hynix Semiconductor, Inc. and is incorporated in California with its principal place of business at 3101 North First Street, San Jose, California 95134. Defendant Hynix Semiconductor America, Inc. produced, promoted, sold, marketed, and/or distributed SRAM to consumers throughout the United States, including Hawaii, during the Class Period. Defendants Hynix Semiconductor America, Inc. and Hynix Semiconductor, Inc. are referred to collectively as "Hynix".

*MATSUSHITA*

22. Defendant Matsushita Electric Industrial Co., Ltd. d/b/a Panasonic is a Japanese company with its principal place of business at 1006, Kadoma, Kadoma City, Osaka 571-8501, Japan.

10

Defendant Matsushita Electric Industrial Co., Ltd. d/b/a Panasonic produced, promoted, sold, marketed, and/or distributed SRAM to customers throughout the United States, including Hawaii, during the Class Period.

23. Defendant Semiconductor Company, Matsushita Electric Industrial Co., Ltd. is a Japanese company with its principal place of business at 1 Kotari-yakemachi, Nagaokakyou, Kyoto Japan. Defendant Semiconductor Company, Matsushita Electric Industrial Co., Ltd. produced, promoted, sold, marketed, and/or distributed SRAM to customers throughout the United States, including Hawaii, during the Class Period. Matsushita Electric Industrial Co., Ltd. d/b/a Panasonic and Semiconductor Company, Matsushita Electric Industrial Co., Ltd. are referred to collectively as "Matsushita".

### MICRON

24. Defendant Micron Technology Incorporated is a Delaware corporation with its principal place of business at 8000 South Federal Way, Boise, Idaho 83707. Defendant Micron Technology Incorporated produced, promoted, sold, marketed, and/or distributed SRAM to consumers throughout the United States, including Hawaii, during the Class Period.

25. Defendant Micron Semiconductor Products, Inc. d/b/a Crucial Technology ("Crucial") is a wholly owned subsidiary

11

of Micron Technology Incorporated and is incorporated in Idaho
with its principal place of business at 3475 E. Commercial Court,
Meridian, Idaho 83642.  Defendant Micron Semiconductor Products,
Inc. d/b/a Crucial Technology produced, promoted, sold, marketed,
and/or distributed SRAM to customers throughout the United
States, including Hawaii, during the Class Period.  Defendants
Micron Semiconductor Products, Inc. d/b/a Crucial Technology and
Micron Technology Incorporated are referred to collectively as
"Micron".

### *MITSUBISHI*

26.  Defendant Mitsubishi Electric Corporation is a
Japanese corporation with its principal place of business at
Tokyo Building 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310
Japan.  Defendant Mitsubishi Electric Corporation produced,
promoted, sold, marketed, and/or distributed SRAM to customers
throughout the United States, including Hawaii, during the Class
Period.

27.  Defendant Mitsubishi Electric & Electronics USA,
Inc. is a wholly owned subsidiary of Mitsubishi Electric
Corporation.  Mitsubishi Electric & Electronics USA, Inc. is
incorporated in Delaware with its principal place of business at
5665 Plaza Drive Cypress, CA 90630.  Defendant Mitsubishi
Electric & Electronics USA, Inc., produced, promoted, sold,

12

marketed, and/or distributed SRAM to customers throughout the
United States, including Hawaii, during the Class Period.
Defendants Mitsubishi Electric & Electronics USA, Inc. and
Mitsubishi Electric Corporation are referred to collectively as
"Mitsubishi".

*NEC*

28. Defendant NEC Electronics Corporation is a
Japanese corporation with its principal place of business at 1753
Shimonumabe, Nakahara-ku, Kawasaki, Kanagawa 211-8668 Japan.
Defendant NEC Electronics Corporation produced, promoted, sold,
marketed, and/or distributed SRAM to customers throughout the
United States, including Hawaii, during the Class Period.

29. Defendant NEC Electronics America, Inc. is a
wholly owned subsidiary of NEC Electronics Corporation and is
incorporated in California with its principal place of business
at 2880 Scott Boulevard, Santa Clara, California 95050.
Defendant NEC Electronics America, Inc. produced, promoted, sold,
marketed, and/or distributed SRAM to customers throughout the
United States, including Hawaii, during the Class Period.  NEC
Electronics America, Inc. and NEC Electronics Corporation are
referred to collectively as "NEC".

13

*RENESAS*

30. Defendant Renesas Technology Corp. is a Japanese corporation with its principal place of business at Marunouchi Building, 4-1 Marunouchi 2-chome, Chiyoda-Ku, Tokyo 100-6334 Japan. Defendant Mitsubishi holds a 45 percent interest in Renesas Technology Corp. Defendant Hitachi controls the remaining 55 percent interest. Defendant Renesas Technology Corp. produced, promoted, sold, marketed, and/or distributed SRAM to consumers throughout the United States, including Hawaii, during the Class Period.

31. Defendant Renesas Technology America, Inc. is a wholly owned subsidiary of Renesas Technology Corp. with its principal place of business at 450 Holger Way, San Jose, California 95134. Defendant Renesas Technology America, Inc. produced, promoted, sold, marketed, and/or distributed SRAM to consumers throughout the United States, including Hawaii, during the Class Period. Defendants Renesas Technology America, Inc. and Renesas Technology Corp. are referred to collectively as "Renesas".

*SAMSUNG*

32. Defendant Samsung Electronics Company, Ltd. is a South Korean corporation with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul,

14

South Korea. Defendant Samsung Electronics Company, Ltd.
produced, promoted, sold, marketed, and/or distributed SRAM to
consumers throughout the United States, including Hawaii, during
the Class Period.

33. Defendant Samsung Semiconductor, Inc. is a wholly
owned subsidiary of Samsung Electronics Company, Ltd. and is
incorporated in California with its principal place of business
at 3655 North First Street, San Jose, California 95134.
Defendant Samsung Semiconductor, Inc. produced, promoted, sold,
marketed, and/or distributed SRAM to consumers throughout the
United States, including Hawaii, during the Class Period.
Defendants Samsung Semiconductor, Inc. and Defendant Samsung
Electronics Company, Ltd. are referred to collectively as
"Samsung".

### SONY

34. Defendant SONY Corporation is a Japanese
corporation with its principal place of business at 6-7-35
Kitashinagawa, Shinagawa-ku, Tokyo 141-0001 Japan. Defendant
SONY Corporation produced, promoted, sold, marketed, and/or
distributed SRAM to consumers throughout the United States,
including Hawaii, during the Class Period.

35. Defendant SONY Corporation of America is a wholly
owned subsidiary of SONY Corporation with its principal place of

business at 550 Madison Avenue, 27th Floor, New York, New York 10022.  Defendant SONY Corporation of America produced, promoted, sold, marketed, and/or distributed SRAM to consumers throughout the United States, including Hawaii, during the Class Period.

36. Defendant SONY Electronics, Inc. is a wholly owned subsidiary of SONY Corporation with its principal place of business at 12450 W. Bernardo St., San Diego, California 92127. Defendant SONY Electronics, Inc. produced, promoted, sold, marketed, and/or distributed SRAM to consumers throughout the United States, including Hawaii, during the Class Period. Defendants SONY Electronics, Inc., SONY Corporation of America and SONY Corporation are referred to collectively as "SONY".

*TOSHIBA*

37. Defendant Toshiba Corporation is incorporated in Japan with its principal place of business at 1-1 Shibaura, 1-chome, Minato-ku, Tokyo 105-8001 Japan.  Defendant Toshiba Corporation produced, promoted, sold, marketed, and/or distributed SRAM to consumers throughout the United States, including Hawaii, during the Class Period.

38. Defendant Toshiba America Corporation is a wholly owned subsidiary of Toshiba Corporation with its principal place of business at 1251 Avenue of the Americas, Suite 4110 New York, New York 10020.  Defendant Toshiba America Corporation produced,

16

promoted, sold, marketed, and/or distributed SRAM to consumers
throughout the United States, including Hawaii, during the Class
Period.

39. Defendant Toshiba America Electronic Components,
Inc. is a wholly owned subsidiary of Toshiba Corporation with its
principal place of business at 9775 Toledo Way, Irvine,
California 92618. Defendant Toshiba America Electronic
Components, Inc. produced, promoted, sold, marketed, and/or
distributed SRAM to customers throughout the United States,
including Hawaii, during the Class Period. Toshiba America
Electronic Components, Inc., Toshiba America Corporation and
Toshiba Corporation are referred to collectively as "Toshiba".

**ADDITIONAL DEFENDANTS**

40. As additional information may come to light,
Plaintiffs reserve the right to add other Defendants as they
become known to them.

41. The acts alleged in this Complaint were, upon
information and belief, authorized, ordered or done by officers,
agents, employees, or representatives of each Defendant while
actively engaged in the management of its business or affairs.

**CO-CONSPIRATORS**

42. Various other individuals, partnerships,
corporations, organizations, firms, and associations not yet made

17

defendants in this Complaint (the "Co-Conspirators") and presently unknown to Plaintiffs, participated as co-conspirators in the violation alleged herein, and performed acts and made statements in furtherance of the conspiracy.

43. The true names and capacities, whether individual, corporate, associate, representative, or otherwise of defendants named herein as DOES 1 through 100 are unknown to Plaintiffs at this time, and are therefore sued by such fictitious names. Plaintiffs will amend this complaint to allege the true names and capacities of DOES 1 through 100 when they become known to them. Each of DOES 1 through 100 is in some manner legally responsible for the violations of law alleged herein.

44. The acts charged in this Complaint as having been done by Defendants and the DOE Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management of the Defendants' businesses or affairs.

### CLASS ACTION ALLEGATIONS

45. This action is brought by Plaintiffs on behalf of themselves, and pursuant to Rule 23 of the Federal Rules of Civil Procedure, as representatives of a class ("the Class"). In particular, Plaintiffs assert that a class action is appropriate under Rule 23(b)(3).

18

46.  The Class is defined as:

> All persons or entities present in Hawaii who
> indirectly purchased SRAM or products
> containing SRAM manufactured by any Defendant
> or Co-Conspirators from at least January 1,
> 1998 to the present. The class of indirect
> purchasers of these products includes
> consumers and businesses who have purchased
> SRAM and/or products containing SRAM.
> Excluded from the class are all governmental
> entities, Defendants and their subsidiaries
> and affiliates.

47.  Although the exact size of the class is unknown, the total number of class members is in the hundreds of thousands as most consumers have purchased SRAM and/or products containing SRAM.  Based upon the nature of the trade and commerce involved, joinder of all Class members would be impracticable.

48.  Plaintiffs' claims are typical of the claims of the Class, and Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have no conflict with any other Class member and has retained competent counsel experienced in class action and antitrust litigation.

49.  Common questions of law and fact exist, including:

(a)  whether Defendants conspired with each other and others to fix, raise, stabilize or maintain the prices of SRAM;

(b)  whether the combination or conspiracy caused SRAM prices to be higher than would have been in the absence of Defendants' conduct;

(c)  the operative time period for the conspiracy;

19

(d)  whether Defendants' conduct caused injury to the
     business or property of Plaintiffs and the Class,
     and if so, the appropriate measure of damages;

(e)  whether Defendants' conduct violated antitrust,
     deceptive and unfair trade practices, and consumer
     protection statutes;

(f)  whether Defendants actively concealed the
     violation alleged herein; and

(g)  the appropriate nature of the class-wide equitable
     relief.

These and other questions of law and fact are common to the Class
and predominate over any questions affecting only individual
Class members.

50.  Class action treatment is a superior method for
the fair and efficient adjudication of the controversy described
herein.  The class action vehicle provides an efficient method
for enforcement of the rights of Plaintiffs and the Class, and
such litigation can be fairly managed.  Plaintiffs know of no
unusual problems of management or notice.

51.  It is desirable for the claims of Plaintiffs and
members of the Class to be consolidated into a single proceeding
to provide all claimants with a forum in which to seek redress
for the violations of the laws of Hawaii.

52.  The difficulties that may exist in the management
of the class action are far outweighed by the benefits of the

20

class action procedure, including but not limited to, providing claimants with a suitable method for the redress of their claims.

**SRAM**

53. SRAM is an integrated circuit that allows digital data to be stored and retrieved at high speeds. SRAM is considered "static" because it retains data as long as power is continuously supplied, and need not be periodically refreshed as does Dynamic Random Access Memory ("DRAM"). This allows SRAM to store and retrieve data at access times as fast as 10 nanoseconds, while DRAM supports access times of 60 nanoseconds. Compared to DRAM, power consumption is more efficient in SRAM, making SRAM more suitable for low-power mobile devices.

54. SRAM is often used as cache memory for computer motherboards and in an array of consumer electronics including: computer networking switches; routers; Internet protocol phones; automotive electronics; mobile phones; portable music devices; handheld radios; navigation systems; pagers; gaming platforms; hard disk drives; compact disc drives; and mini-disc recorders.

55. The SRAM market is conducive to the kind of anticompetitive practices alleged in this Complaint. The market is oligopolistic in nature, characterized by high manufacturing costs and technological barriers to entry.

21

56. Defendant Samsung has consistently lead worldwide semiconductor production, including SRAM, and holds approximately 30 percent of the world's SRAM market share.

57. According to Samsung's "Memory Business Overview" for 2006, available at Samsung's website, the top four manufacturers combined controlled approximately 65 percent of the SRAM market share in 2005 and posted worldwide SRAM revenues of nearly $3 billion. Also according to Samsung's "Memory Business Overview" for 2006, the market shares of the top SRAM manufacturers in 2004 and 2005 were:

|          | 2004 | 2005 |
|----------|------|------|
| Samsung  | 34%  | 29%  |
| Micron   | 4%   | 15%  |
| Cypress  | 15%  | 11%  |
| NEC      | 11%  | 10%  |
| Renesas  | 6%   | 5%   |
| Toshiba  | 6%   | 5%   |

58. Prior to the Class Period, from 1994 to 1997, SRAM prices in the United States decreased significantly. In 1995, the average selling price of SRAM in the United States was $5.55. The average selling price dropped to $3.64 by 1997. New competitors entered the semiconductor market during this time and

22

the increased manufacturing capacity of all competitors contributed to these price declines.

59. In 1997, Micron initiated an antidumping action before the Court of International Trade regarding the importation of SRAM from Korea and Taiwan. Despite an unfavorable ruling for Micron, these antidumping proceedings can lead to collusion.

60. The average selling price of SRAM rose significantly from 1998 to 2001 largely because of collusion among the Defendants. During this period, Defendants agreed to reduce supply in order to artificially raise prices. For instance, in 2000, the average selling price of SRAM had risen to $5.24 from $3.93 in 1999, representing a gain of 33 percent. Although SRAM prices decreased during part of 2001 and in part of 2002, the Defendants' collusion operated to mitigate those declines, such that prices remained at supra-competitive levels. In 2002, SRAM prices again began to rebound. This trend continued in 2003 and subsequent years. The collusive activity among the Defendants and their Co-Conspirators kept those prices at supra-competitive levels.

61. The SRAM industry has undergone significant consolidation throughout the Class Period leading to fewer manufacturers in the SRAM market. Examples of this consolidation include Integrated Device Technology, Inc.'s acquisition of

23

Integrated Circuit Systems, Inc. in June 2005 and the merger of
Hitachi Ltd.'s and Mitsubishi's semiconductor divisions in April
2003. The Hitachi Ltd. and Mitsubishi merger created a new entity
called Renesas, which is now one of the leading manufacturers of
SRAM.

62. The U.S. Department of Justice ("DOJ"), Antitrust
Division, recently launched an investigation of these
anticompetitive practices by the SRAM manufacturers. On October
12, 2006, the DOJ subpoenaed Defendants Cypress and Micron. Both
Defendants have acknowledged in official press releases that the
DOJ has contacted them about the SRAM investigation. On the
following day, Defendant Samsung was served with a subpoena at
its headquarters in Seoul, Korea. Shortly thereafter, Defendants
Mitsubishi and Toshiba were also subpoenaed. These Defendants
have all publicly admitted to being contacted by the DOJ about
the industry wide investigation.

63. Defendant SRAM producers Samsung, Mitsubishi,
Toshiba, Micron, Cypress and Sony have all publicly acknowledged
the DOJ investigation, indicating in their respective statements
their cooperation with the same. In an October 17, 2006 press
release, Toshiba referred to the fact that the DOJ appeared to be
conducting an "industry-wide investigation". A Cypress
spokesperson has stated that the "DOJ is looking at the market

24

and the prices involved". A Micron spokesperson has gone as far as to admit Micron was a target of the DOJ investigation, however not the "main target".

64. Price fixing in the high-technology semiconductor industry has also occurred in other product markets, including a recent conspiracy for DRAM. Not surprisingly, many of those Defendants in the DRAM case are also implicated in this new investigation of the semiconductor industry, such as Defendants Samsung, Micron, and Mitsubishi.

### TRADE AND COMMERCE

65. The activities of Defendants and Co-Conspirators, as described herein, were within the flow of, and were intended to, and did have a substantial effect on the commerce of SRAM and products containing SRAM throughout Hawaii.

66. During the Class Period, Defendants sold and shipped substantial quantities of SRAM and/or products containing SRAM to manufacturing businesses throughout Hawaii. Those businesses incorporated the SRAM into other products including, but not limited to, personal computers, computer workstations, computer servers, cellular phones, computer networking switches, routers, Internet protocol phones, automotive electronics, mobile phones, portable music devices, handheld radios, navigation systems, pagers, gaming platforms, hard disk drives, compact disc

drives, and mini-disc recorders, and then sold those goods to consumers and businesses throughout Hawaii.

67. The contract, combination, and conspiracy consists, upon information and belief, of a continuing agreement, understanding, and concert of action between and among Defendants and their Co-Conspirators, the substantial terms of which were and are to fix, stabilize, and maintain prices, allocate markets and customers, and to coordinate price increases for the sale of SRAM throughout Hawaii.

68. The acts in furtherance of the conspiracy by Defendants have included, on information and belief, the following wrongful conduct and horizontal agreements:

      (a) participating in meetings and conversations on a periodic basis since at least January 1, 1998, in which Defendants and their Co-Conspirators discussed and agreed to fix, raise, stabilize, and maintain the prices for SRAM;

      (b) participating in meetings and conversations on a periodic basis since at least January 1, 1998, in which Defendants and their Co-Conspirators discussed and agreed to allocate markets and customers for SRAM;

      (c) participating in meetings and conversations on a periodic basis since at least January 1, 1998, in which Defendants and their Co-Conspirators discussed and agreed to refrain from engaging in competitive bidding, or to submit complementary and non-competitive bids, for particular contracts to supply SRAM to various customers;

(d) exchanging sales and customer information for the purposes of monitoring and enforcing adherence to the agreements reached;

(e) issuing price announcements, price quotations, and general price increases in accordance with the pricing and market allocation agreements reached; and

(f) facilitating, effectuating, implementing, monitoring and concealing the contract, combination, and conspiracy to raise the prices of SRAM sold.

69. For the purposes of formulating and effectuating the aforesaid contract, combination, and conspiracy, Defendants and their Co-Conspirators did those things which they conspired to do.

**IMPERMISSIBLE MARKET EFFECTS**

70. The contract, combination, and conspiracy alleged herein had the following effects, among others:

(a) prices paid by Plaintiffs and the Class for SRAM and products containing SRAM were fixed, raised, maintained, and stabilized at artificially high and noncompetitive levels;

(b) indirect purchasers of SRAM and products incorporating SRAM were deprived of the benefits of free and open competition; and

(c) competition between and among Defendants and their Co-Conspirators in the sale of SRAM was unreasonably restrained.

71. As a result, Plaintiffs and the Class have been injured in their business and property in that they paid more for

27

products containing SRAM than they otherwise would have paid in
the absence of Defendants' unlawful contract, combination, and
conspiracy.

## FRAUDULENT CONCEALMENT

72. Throughout the Class Period, Defendants and their
Co-Conspirators effectively, affirmatively, and fraudulently
concealed their unlawful combination and conspiracy from
Plaintiffs.

73. Defendants and their Co-Conspirators engaged in a
successful, illegal price-fixing conspiracy that was by its
nature self-concealing.

74. Defendants' wrongful conduct was carried out in
part through means and methods that were designed and intended to
avoid detection, and which in fact, successfully precluded
detection. Although Plaintiffs exercised due diligence
throughout the Class Period, they could not have discovered
Defendants' unlawful scheme and conspiracy at any earlier date
because of Defendants' effective, affirmative, and fraudulent
concealment of their activities.

75. Defendants periodically withheld supply of SRAM
and other memory components to create an artificial supply
shortage, generating a level of artificial demand to drive up

28

prices, while publicly stating that the wild price fluctuations were due to other factors.

76. Defendants used other means of communication that were designed and intended to avoid detection, including numerous telephone calls among the conspirators.

77. Defendants communicated to their United States entities false reasons to explain price increases, such as seasonal ebb and flow and a highly competitive market, and instructed them to use these false reasons with U.S. customers. Plaintiffs and the members of the Class had no reason to disbelieve Defendants' explanations of the pricing behavior of these products. Indeed, in some instances Defendants' explanations involved proprietary or otherwise non-public information within Defendants' control, leaving Plaintiffs and members of the Class without means to verify their accuracy. In fact, Defendants' prices for SRAM were artificially inflated and maintained by virtue of Defendant's illegal price-fixing conspiracy; Plaintiffs and the other members of the Class were paying higher prices for SRAM than they would have paid in a competitive market.

78. Plaintiffs have exercised due diligence by promptly investigating the facts giving rise to the claims asserted herein upon having reasonable suspicion of the existence

29

of Defendants' conspiracy, and by seeking discovery as to the
matters asserted herein, to the extent permitted by law.

## COUNT I

### (Class Action Antitrust Allegations)

79. Plaintiffs hereby adopt and incorporate by this
reference each of the preceding paragraphs as fully set forth
herein.

80. Beginning at least by January 1, 1998, the exact
date being unknown to Plaintiffs, and continuing to the present,
Defendants and their Co-conspirators engaged in a contract,
combination, and conspiracy in an unreasonable restraint of trade
and commerce substantially affecting trade or commerce throughout
the United States, including Hawaii. The foregoing conduct has
been, and continues to be, conducted in violations of H.R.S. §§
480-1, *et seq.*

81. Each of the Defendants named herein, directly or
indirectly and through affiliates, dominated, controlled,
manufactured, sold and/or distributed SRAM throughout the United
States, including Hawaii.

82. During the Class Period, Defendants have engaged
in unfair and deceptive acts and practices including those
described herein and/or combinations of capital, skill, and acts
with others with the intent, purpose and effect of creating and

30

carrying out restrictions in trade and commerce; increasing the price and limiting and reducing the supply of SRAM; and restraining trade and preventing competition in the relevant markets of SRAM products, thereby enabling Defendants to perpetuate their monopoly.

83. As a direct and proximate result of Defendants' unlawful, unfair and deceptive acts and practices, including combinations and contracts to restrain trade and monopolize the relevant markets, consumers throughout the United States, including Hawaii, have suffered injury and have been deprived of the benefits of free and fair competition on the merits. Pursuant to H.R.S. §480-1, *et. seq.*, Plaintiffs demand treble damages and restitution from the Defendants of all monies illegally acquired by them as a result of the unlawful conduct alleged herein.

### COUNT II

**(Class Action Deceptive Trade Practice Allegations)**

84. Plaintiffs hereby adopt and incorporate by this reference each of the preceding paragraphs as fully set forth herein.

85. Defendants' actions described herein constitute deceptive trade practices in Hawaii that are actionable under H.R.S. §§ 480-1, *et. seq.*

31

86. By reason of Defendants' unlawful trade practices in Hawaii, Plaintiffs and other members of the Class who indirectly purchased SRAM have been injured because, among other reasons, they have paid more for SRAM and/or products containing SRAM than they would have paid in the absence of the Defendants' unlawful trade practices.

87. Consumers in Hawaii have been and will continue to be injured in their business and property by Defendants' unfair and deceptive trade practices.

88. Pursuant to H.R.S. §§ 480-1, *et. seq.*, Plaintiffs demand all available damages and restitution from the Defendants of all monies illegally acquired by them as a result of the unlawful conduct alleged herein.

## Count III

### (Unjust Enrichment and Disgorgement of Profits)

89. Plaintiffs hereby adopt and incorporate by this reference each of the preceding paragraphs as fully set forth herein.

90. Defendants benefitted from their unlawful acts through the overpayment for SRAM and products containing SRAM by Plaintiffs and members of the Class. It would be inequitable for Defendants to be permitted to retain the benefits of these

32

overpayments, which were conferred by Plaintiffs and members of the Class and retained by Defendants.

91. Plaintiffs and the members of the Class are entitled to have returned to each of them the amount of such overpayments as damages or restitution.

## COUNT IV

### (Injunctive Relief)

92. Plaintiffs hereby adopt and incorporate by this reference each of the preceding paragraphs as fully set forth herein.

93. It is in the best interest of the public to enjoin, pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Defendants and their officers, agents, employees, or representatives from engaging in the unlawful contract, combination, and conspiracy in restraint of trade or commerce of SRAM or products containing SRAM.

94. Plaintiffs and members of the Class will continue to be injured by Defendants' ongoing conduct in violation of the antitrust laws of the United States and the antitrust, deceptive and unfair trade practices, and consumer protection statutes of Hawaii, in the absence of injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against all Defendants, jointly and severally, and respectfully request the Court:

1. Certify this action to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and direct that reasonable notice be given to members of the Class;

2. Declare that Defendants have engaged in unfair and deceptive acts, practices, and/or combinations of capital, skill and acts with others sufficient to constitute a trust for the purpose of creating or carrying out restrictions in trade or commerce, limiting and reducing the production and increasing the price of merchandise or a commodity, and preventing competition in the manufacturing, making, transporting, selling and/or purchasing of merchandise, products, or a commodity;

3. Adjudge and decree that Defendants and each of them have engaged in an unlawful contract, combination, and conspiracy in restraint of trade or commerce in violation of the antitrust, deceptive and unfair trade practices, and consumer protection statutes of Hawaii, and an unlawful civil conspiracy in violation of common law, substantially affecting trade or commerce throughout the United States, and that the Court award Plaintiffs and members of the Class: (i) actual damages in an

34

amount to be proved at trial as a result of the wrongful conduct alleged, plus interest and costs; (ii) treble damages; and (iii) all other damages available under the laws of Hawaii;

4.   Adjudge and decree that the Defendants and each of them have been unjustly enriched and that the Court return to Plaintiffs and members of the Class the amount of such overpayments as damages or restitution;

5.   Award Plaintiffs and the members of the Class the costs of the suit, including reasonable attorney's fees;

6.   Award Plaintiffs and the members of the Class pre-judgment and post-judgment interest on the above sums at the highest rate allowed by law;

7.   Award Plaintiffs a permanent injunction under Section 16 of the Clayton Act, 15 U.S.C. § 26, enjoining Defendants, and their officers, agents, employees, or representatives from engaging in this unlawful contract, combination, and conspiracy in restraint of trade or commerce; and

8. Grant such other, further or different relief as the Court deems just and proper.

DATED: Honolulu, Hawaii, _____ DEC 15 2006 _____.


_____
STEVEN K. HISAKA
GAIL Y. COSGROVE
KUNIO KUWABE
Attorneys for Plaintiffs