# EXHIBIT A

1  FRANCIS O. SCARPULLA (Cal. S.B. 41059)
2  CRAIG C. CORBITT (Cal. S.B. 83251)
   JUDITH A. ZAHID (Cal. S.B. 215418)
3  MATTHEW R. SCHULTZ (Cal. S.B. 220641)
   ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP
4  44 Montgomery Street, Suite 3400
   San Francisco, CA 94104
5  Telephone:     (415) 693-0700
   Facsimile:     (415) 693-0770
6  fscarpulla@zelle.com
7  ccorbitt@zelle.com

8  (Additional Attorneys Listed on Signature Page)

**ORIGINAL FILED**

OCT 1 8 2006

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

9              UNITED STATES DISTRICT COURT

10            [NORTHERN DISTRICT OF CALIFORNIA]

11               [SAN FRANCISCO DIVISION]

12

13  RECLAIM CENTER, INC.; a Minnesota
14  Corporation; KYM MASTERS, a California
    resident; TODD BERG, a California resident;
15  JUDD ELIASOPH, a California resident; JO
    NASH, a California resident; BEKAH ZIETZ,
16  a Washington resident; TRONG H. NGUYEN,
    a California resident; CHAD KLEBS, a
17  Minnesota resident; JAIMIE THOMPSON, a
18  Missouri resident, on behalf of themselves and
    all others similarly situated,
19
             Plaintiffs,
20
21  v.

22  SAMSUNG ELECTRONICS CO., LTD.;
    SAMSUNG SEMICONDUCTOR, INC.;
23  HYNIX SEMICONDUCTOR, INC.; HYNIX
    SEMICONDUCTOR AMERICA, INC.;
24  MICRON TECHNOLOGY, INC.; MICRON
    SEMICONDUCTOR PRODUCTS, INC.;
25  WINBOND ELECTRONICS
    CORPORATION; WINBOND
26  ELECTRONICS CORPORATION
27  AMERICA, INC.; NEC ELECTRONICS
28

Case No.

**C 06    6533**

SI

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

1  AMERICA, INC.; CYPRESS
   SEMICONDUCTOR, INC.; ALLIANCE
2  SEMICONDUCTOR CORPORATION;
   FUJITSU LTD.; FUJITSU AMERICAN,
3  INC.; GSI TECHNOLOGY, INC.; HITACHI
   LTD.; HITACHI AMERICA LTD.;
4  INTERNATIONAL BUSINESS MACHINES
   CORPORATION; IBM
5  MICROELECTRONICS LTD.;
   INTEGRATED DEVICE TECHNOLOGY,
6  INC.; INTEGRATED SILICON SOLUTION,
7  INC.; MITSUBISHI ELECTRIC CORP.;
   MITSUBISHI ELECTRIC AND
8  ELECTRONICS U.S.A., INC.; RENESAS
   TECHNOLOGY CORPORATION;
9  RENESAS TECHNOLOGY AMERICA,
10 INC.; SEIKO EPSON CORPORATION;
   EPSON AMERICA, INC.; EPSON
11 ELECTRONICS AMERICA, INC.; SHARP
   CORPORATION; SHARP ELECTRONICS
12 CORPORATION; SONY CORPORATION;
   SONY CORPORATION OF AMERICA;
13 SONY ELECTRONICS, INC.;
14 STMICROELECTRONICS N.V.;
   STMICROELECTRONICS, INC.; TOSHIBA
15 CORPORATION; TOSHIBA AMERICA
   CORPORATION; TOSHIBA AMERICA
16 ELECTRONIC COMPONENTS, INC.;

17            Defendants.

18 _____

19     Plaintiffs, by their attorneys, bring this civil action for damages and injunctive relief on

20 behalf of themselves and all others similarly situated against the above-named Defendants, and

21 demanding a trial by jury, complain and allege as follows:

22              **JURISDICTION AND VENUE**

23     1.    This complaint is filed under Section 16 of the Clayton Act, 15 U.S.C. § 26, to

24 obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, to recover

25 damages under state antitrust and consumer protection laws, and to recover the costs of suit,

26 including reasonable attorneys' fees, for the injuries that Plaintiffs and all others similarly

27 situated sustained as a result of the Defendants' violations of those laws.

28
                              2

2.   The Court has jurisdiction over the federal claim under 28 U.S.C. §§ 1331 and 1337. The Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy. The Court also has jurisdiction over the state law claims under 28 U.S.C. § 1332 because the amount in controversy for the Class exceeds $5,000,000, and there are members of the Class who are citizens of a different state than the defendants.

3.   Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. § 1391 because defendants reside, transact business, or are found within this District, and a substantial part of the events giving rise to the claims arose in this District.

4.   The activities of the Defendants and their co-conspirators, as described herein, were within the flow of, were intended to, and did have a substantial effect on the foreign and interstate commerce of the United States.

## DEFINITIONS

5.   As used herein, the term "Static Random Access Memory" ("SRAM") includes all types of static random access memory sold during the class period, including, without limitation, high speed SRAM, low-powered SRAM, synchronous SRAM (including both Late Write and DDR synchronous SRAM), asynchronous SRAM (including asynchronous fast SRAM), pseudo SRAM (also known as "PSRAM" or "mobile PSRAM"), DDR SRAM "cellularRAM", and "slow SRAM". For purposes of this complaint, SRAM is defined to exclude all types of dynamic random access memory ("DRAM") sold during the class period, including SDRAM

6.   SRAM is a type of memory that is faster and more reliable than DRAM. The term "static" is derived from the fact that SRAM does not need to be refreshed like dynamic RAM. While DRAM supports access times of about 60 nanoseconds, SRAM can give access times of 10 nanoseconds. In addition, its cycle time is much shorter than that of DRAM because it does not need to pause between accesses. SRAM is used for a variety of applications. It is used as Level 1, 2, or 3 cache on the motherboards of computers, including servers. It is used in

3

1  cellular telephones and other handheld devices; according to iSuppli Corporation data, use of

2  SRAM for mobile communications applications increased from 30.6% in 2000 to 44% in 2002.

3  SRAM is also used in game consoles; for example, the Samsung defendants provide the SRAM

4  used in Xboxes sold by Microsoft Corporation.

5      7.    As used herein, the term "Class Period" means the time period January 1, 1998

6  through December 31, 2005.

7  **THE PARTIES**

8  A.    **The Plaintiffs**

9      8.    Plaintiff Reclaim Center, Inc., a Minnesota corporation, indirectly purchased

10  SRAM from one or more of the Defendants during the Class Period, for end use and not for

11  resale, and was injured as a result of Defendants' illegal conduct.

12      9.    Plaintiff Kym Masters, a California resident, indirectly purchased SRAM from

13  one or more of the Defendants during the Class Period, for end use and not for resale, and was

14  injured as a result of Defendants' illegal conduct.

15      10.    Plaintiff Todd Berg, a California resident, indirectly purchased SRAM from one

16  or more of the Defendants during the Class Period, for end use and not for resale, and was

17  injured as a result of Defendants' illegal conduct.

18      11.    Plaintiff Judd Eliasoph, a California resident, indirectly purchased SRAM from

19  one or more of the Defendants during the Class Period, while he resided in Indiana, for end use

20  and not for resale, and was injured as a result of Defendants' illegal conduct.

21      12.    Plaintiff Chad Klebs, a Minnesota resident, indirectly purchased SRAM from one

22  or more of the Defendants during the Class Period, for end use and not for resale, and was

23  injured as a result of Defendants' illegal conduct.

24      13.    Plaintiff Bekah Zietz, a Washington resident, indirectly purchased SRAM from

25  one or more of the Defendants during the Class Period while she resided in Vermont, for end use

26  and not for resale, and was injured as a result of Defendants' illegal conduct.

27

28

4

1    14.    Plaintiff Jo Nash, a California resident, indirectly purchased SRAM from one or

2  more of the Defendants during the Class Period, for end use and not for resale, and was injured

3  as a result of Defendants' illegal conduct.

4    15.    Plaintiff Trong H. Nguyen, a California resident, indirectly purchased SRAM

5  from one or more of the Defendants during the Class Period while he resided in Washington, for

6  end use and not for resale, and was injured as a result of Defendants' illegal conduct.

7    16.    Plaintiff Jaimie Thompson, a Missouri resident, indirectly purchased SRAM from

8  one or more of the Defendants during the Class Period, for end use and not for resale, and was

9  injured as a result of Defendants' illegal conduct.

10  B.    **The Defendants**

11    17.    Defendant Samsung Electronics Co. Ltd. is a business entity organized under the

12  laws of South Korea, with its principal place of business at Samsung Main Building 250-2 ga,

13  Taepyung-ro Chung-gu, Seoul, Korea.   During the time period covered by this Complaint,

14  Defendant Samsung Electronics Co. Ltd. manufactured, sold and distributed SRAM to customers

15  throughout the United States.

16    18.    Defendant Samsung Semiconductor, Inc. is a wholly owned and controlled

17  subsidiary of defendant Samsung Electronics Co. Ltd. with its principal place of business at 3655

18  North First Street, San Jose, California.   During the time period covered by this Complaint,

19  Defendant Samsung Semiconductor, Inc. sold and distributed SRAM to customers throughout

20  the United States.  Samsung Electronics Co. Ltd., and Samsung Semiconductor, Inc. are referred

21  to collectively herein as "Samsung."

22    19.    Defendant Hynix Semiconductor, Inc. is a business entity organized under the

23  laws of South Korea, with its principal place of business at SAN 136-1, Ami-Ri Bubal-eub,

24  Ichon-si, Kyongki-do, Korea.   During the time period covered by this Complaint, Defendant

25  Hynix Semiconductor, Inc. manufactured, sold and distributed SRAM to customers throughout

26  the United States.

27

28

CLASS ACTION COMPLAINT

1    20.    Defendant Hynix Semiconductor America, Inc. is a wholly owned and controlled

2    subsidiary of defendant Hynix Semiconductor, Inc. with its principal place of business at 3101

3    North First Street, San Jose, California.  During the time period covered by this Complaint,

4    Defendant Hynix Semiconductor America, Inc. sold and distributed SRAM to customers

5    throughout the United States.  Hynix Semiconductor, Inc. and Hynix Semiconductor America,

6    Inc. are referred to collectively herein as "Hynix."

7    21.    Defendant Micron Technology, Inc. is a Delaware Corporation with its principal

8    place of business at 8000 South Federal Way, Boise, Idaho.  During the time period covered by

9    this Complaint, Defendant Micron Technology, Inc. manufactured, sold and distributed SRAM

10    throughout the United States.

11    22.    Defendant Micron Semiconductor Products, Inc. is a wholly owned and controlled

12    subsidiary of defendant Micron Technology, Inc. with its principal place of business at 8000

13    South Federal Way, Boise, Idaho.  During the time period covered by this Complaint, Defendant

14    Micron Semiconductor Products, Inc. sold and distributed SRAM to customers throughout the

15    United States.  Micron Technology, Inc. and Micron Semiconductor Products, Inc. are referred to

16    collectively herein as "Micron."

17    23.    Defendant NEC Electronics America, Inc. ("NEC") is a wholly owned and

18    controlled subsidiary of NEC Electronics Corporation, with its principal place of business at

19    2880 Scott Boulevard, Santa Clara, California and its manufacturing plant in Roseville,

20    California.  During the time period covered by this Complaint, Defendant NEC sold and

21    distributed DRAM to customers throughout the United States.

22    24.    Defendant Cypress Semiconductor, Inc. ("Cypress")is a business entity organized

23    under the laws of California, with its principal place of business at 3939 North First Street, San

24    Jose, California.  During the time period covered by this Complaint, Defendant Cypress

25    Semiconductor, Inc. sold and distributed SRAM to customers throughout the United States.

26    25.    Defendant Alliance Semiconductor Corporation ("Alliance") is a business entity

27    organized under the laws of Delaware, with its principal place of business at 2575 Augustine

28

6

CLASS ACTION COMPLAINT

1  Drive, Santa Clara, California 95054.  During the time period covered by this Complaint,

2  Defendant Alliance Semiconductor Corporation sold and distributed SRAM to customers

3  throughout the United States.

4      26.    Defendant Fujitsu Ltd. is a business entity organized under the laws of Japan with

5  its principal place of business Shiodome City Center 1-5-2 Higashi-Shimbashi, Minato-ku,

6  Tokyo 105-7123, Japan.  During the time period covered by this Complaint, Defendant Fujitsu

7  Ltd. sold and distributed SRAM to customers throughout the United States.

8      27.    Defendant Fujitsu America, Inc., is a wholly owned and controlled subsidiary of

9  defendant Fujitsu Ltd..  Fujitsu Ltd. is a business entity organized under the laws of California,

10 with its principal place of business at 1250 Arques Ave., M/S 124 Sunnyvale, Ca 94085.

11 During the time period covered by this Complaint, Defendant Fujitsu America, Inc. sold and

12 distributed SRAM to customers throughout the United States.  Fujitsu Ltd. and Fujitsu America,

13 Inc. are referred to collectively herein as "Fujitsu."

14     28.    Defendant GSI Technology, Inc.("GSI") is a business entity organized under the

15 laws of Delaware, with its principal place of business at 2360 Owen St. Santa Clara, Ca 95054.

16 During the time period covered by this Complaint, Defendant GSI Technology, Inc. sold and

17 distributed SRAM to customers throughout the United States.

18     29.    Defendant Hitachi Ltd. is a business entity organized under the laws of Japan,

19 with its principle place of business at 6-1 Marunouchi Center Building 13F Chiyoda-

20 ku,Tokyo,100-8220, Japan.  During the time period covered by this Complaint, Defendant

21 Hitachi Ltc. sold and distributed SRAM to customers throughout the United States.

22     30.    Defendant Hitachi America Ltd. is a wholly owned and controlled subsidiary of

23 defendant Hitachi Ltd.  Hitachi America Ltd. is a business entity organized under the laws of

24 New York, with its principal place of business at 50 Prospect Avenue, Tarrytown, New York,

25 10591. During the time period covered by this Complaint, Defendant Hitachi America Ltd. sold

26 and distributed SRAM to customers throughout the United States.  Hitachi Ltd. and Hitachi

27 America Ltd. are referred to collectively herein as "Hitachi."

28

7

CLASS ACTION COMPLAINT

31.     Defendant International Business Machines Corporation ("IBM") is a business entity organized under the laws of New York, with its principal place of business at New Orchard Road, Armonk, New York, 10504. During the time period covered by this Complaint, Defendant IBM sold and distributed SRAM to customers throughout the United States.

32.     Defendant IBM Microelectronics ("IBM Micro") is a business entity organized under the laws of Canada, with its principal place of business 50 Hines Road, Suite 240, Ontario, Canada K2KM5.     IBM Micro's U.S. Office is located at 1133 Westchester Avenue White Plains, NY 10604, USA.   During the time period covered by this Complaint, Defendant IBM Micro manufactured, sold and distributed SRAM to customers throughout the United States.

33.     Defendant Integrated Device Technology, Inc. ("IDT") is a business entity organized under the laws of California, with its principal place of business at 6024 Silver Creek Valley Road, San Jose, California 95138. During the time period covered by this Complaint, Defendant Integrated Device Technology manufactured, sold and distributed SRAM to customers throughout the United States.

34.     Defendant Integrated Silicon Solution, Inc. ("ISSI") is a business entity organized under the laws of Delaware, with its principal place of business at 2331 Lawson Lane, Santa Clara, California.     During the time period covered by this Complaint, Defendant ISSI manufactured, sold and distributed SRAM to customers throughout the United States.

35.     Defendant Mitsubishi Electric Corporation is a business entity organized under the laws of Japan, with its principal place of business at Tokyo Building 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310, Japan.   During the time period covered by this Complaint, Defendant Mitsubishi Electric Corporation, Inc. manufactured, sold and distributed SRAM to customers throughout the United States.

36.     Defendant Mitsubishi Electric & Electronics USA, Inc. is a wholly owned and controlled subsidiary of defendant Mitsubishi Electric Corporation.   Defendant Mitsubishi Electric & Electronics USA, Inc. is a business entity organized under the laws of Delaware, with

8

its principal place of business at 500 Corporate Woods Parkway, Vernon Hills, IL 60061. During the time period covered by this Complaint, Defendant Mitsubishi Electric & Electronics USA, Inc. manufactured, sold and distributed SRAM to customers throughout the United States.

37.    Defendant Seiko Epson Corporation is a business entity organized under the laws of Japan, with its principal place of business at 3-3-5 Owa, Suwa, Nagano, Japan. During the time period covered by this Complaint, Defendant Seiko Epson Corporation sold and distributed SDRAM to customers throughout the United States.

38.    Defendant Epson America, Inc. is a wholly owned and controlled subsidiary of Seiko Epson Corporation with its principal place of business at 3840 Kilroy Airport Way, Long Beach, California 90806. During the time period covered by this Complaint, Epson America, Inc. sold and distributed SDRAM to customers throughout the United States.

39.    Defendant Epson Electronics America, Inc. is a wholly owned and controlled subsidiary of Seiko Epson Corporation with its principal place of business at 150 River Oaks Parkway, San Jose, California 95134. During the time period covered by this Complaint, Epson Electronics America, Inc. sold and distributed SDRAM to customers throughout the United States. Defendants Seiko Epson Corporation, Epson America, Inc., and Epson Electronics America, Inc. are referred to collectively herein as "Seiko Epson."

40.    Defendant Renesas Technology Corporation is a business entity organized under the laws of Japan with its principal place of business at Marunouchi Building, 4-1, Marunouchi 2-chome, Chiyoda-ku Tokyo 100-6334, Japan. During the time period covered by this Complaint, Defendant Resesas Technology Corporation sold and distributed SRAM to customers throughout the United States.

41.    Defendant Renesas Technology America, Inc. is a wholly owned and controlled subsidiary of Renesas Technology Corporation with its principal place of business at 450 Holger Way, San Jose, California, 95134-1368. During the time period covered by this Complaint, Defendant Renesas Technology America, Inc. sold and distributed SRAM to customers

1 throughout the United States.   Defendants Renesas Technology Corporation and Renesas

2 Technology America, Inc. are referred to collectively herein as "Renesas."

3       42.    Defendant Sharp Corporation is a business entity organized under the laws of

4 Japan, with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522,

5 Japan.   During the time period covered by this Complaint, Sharp Corporation sold and

6 distributed SRAM to customers throughout the United States.

7       43.    Defendant Sharp Electronics Corporation is a wholly owned and controlled

8 subsidiary of Sharp Corporation, with its principal place of business at Sharp Plaza, Mahwah,

9 New Jersey, 07430.   During the time period covered by this Complaint, Sharp Electronics

10 Corporation sold and distributed SRAM to customers throughout the United States.   Sharp

11 Corporation and Sharp Electronics Corporation are referred to collectively herein as "Sharp."

12      44.    Defendant Sony Corporation is a business entity organized under the laws of

13 Japan, with its principal place of business at 6-7-35 Kitashinagawa, Shinagawa-ku, Tokyo 141-

14 0001, Japan.   During the time period covered by this Complaint, Sony Corporation sold and

15 distributed SRAM to customers throughout the United States.

16      45.    Defendant Sony Corporation of America is a wholly owned and controlled

17 subsidiary of Sony Corporation, with its principal place of business at 550 Madison Avenue,

18 27th Floor, New York, NY 10022.   During the time period covered by this Complaint, Sony

19 Corporation of America sold and distributed SRAM to customers throughout the United States.

20      46.    Defendant Sony Electronics, Inc. is a wholly owned and controlled subsidiary of

21 Sony Corporation, with its principal place of business located at 12450 W. Bernardo St., San

22 Diego, CA 92127.   During the time period covered by this Complaint, Sony Electronics, Inc.

23 sold and distributed SRAM to customers throughout the United States.   Sony Corporation, Sony

24 Corporation of America, and Sony Electronics, Inc. are referred to collectively herein as "Sony."

25      47.    Defendant STMicroelectronics N.V. is a business entity organized under the laws

26 of The Netherlands, with its principal place of business at 39 Chemin Du Camp – des – filles,

27 1228 Plan-les-ouates, Geneva, Switzerland 1228.   During the time period covered by this

28

10

CLASS ACTION COMPLAINT

1    Complaint, Defendant STMicroelectronics N.V. manufactured, sold and distributed SRAM to

2    customers throughout the United States.

3         48.    STMicroelectronics, Inc. is a wholly owned and controlled subsidiary of

4    STMicroelectronics N.V. with its principal place of business located at 1310 Electronics Dr.,

5    M/S 2308, Carrollton, Texas 75006.    During the time period covered by this Complaint,

6    Defendant STMicroelectronics, Inc. manufactured, sold and distributed SRAM to customers

7    throughout the United States.    STMicroelectronics N.V. and STMicroelectronics, Inc. are

8    referred to collectively herein as "STMicroelectronics."

9         49.    Defendant Toshiba Corporation is a business entity organized under the laws of

10   Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-

11   8001, Japan.    During the time period covered by this Complaint, Defendant Toshiba Corporation

12   manufactured, sold and distributed SRAM to customers throughout the United States.

13        50.    Defendant Toshiba America Corporation is a wholly owned and controlled

14   subsidiary of Toshiba Corporation with its principal place of business at 1251 Avenue of the

15   Americas, Suite 4110 New York, NY 10020.    During the time period covered by this Complaint,

16   Defendant Toshiba America Corporation manufactured, sold and distributed SRAM to customers

17   throughout the United States.

18        51.    Defendant Toshiba America Electronic Components, Inc. is a wholly owned and

19   controlled subsidiary of Toshiba Corporation with its principal place of business located at

20   19900 MacArthur Boulevard Suite 400, Irvine, CA 92612.    During the time covered by this

21   Complaint, Defendant Toshiba America Electronic Components, Inc. sold and distributed SRAM

22   to customers throughout the United States.    Toshiba Corporation, Toshiba America Corporation,

23   and Toshiba America Electronic Components, Inc. are referred to collectively herein as

24   "Toshiba."

25        52.    Defendant Winbond Electronics Corporation is a business entity organized under

26   the laws of Taiwan, with its principal place of business at 4, Creaton Road, 111, Science-Based

27   Industrial Park, Hsinchu, Taiwan, R.O.C.    During the time period covered by this Complaint,

28                                        11
                              CLASS ACTION COMPLAINT

1  Defendant Winbond Electronic Corporation manufactured, sold and distributed SRAM to

2  customers throughout the United States.

3      53.    Defendant Winbond Electronics Corporation America, Inc., is a wholly owned

4  and controlled subsidiary of Winbond Electronics Corporation with its principal place of

5  business at 2727 North First Street, San Jose, California. During the time period covered by this

6  Complaint, Defendant Winbond Electronics Corporation America, Inc. sold and distributed

7  SRAM to customers throughout the United States. Winbond Electronics Corporation and

8  Winbond Electronics Corporation America, Inc. are referred to collectively herein as

9  "Winbond."

10  C.    **Co-Conspirators**

11      54.    Various others, presently unknown to Plaintiffs, participated as co-conspirators

12  with the Defendants in the violations of law alleged in this Complaint and have engaged in

13  conduct and made statements in furtherance thereof.

14      55.    The acts charged in this Complaint have been done by Defendants and their co-

15  conspirators, or were authorized, ordered or done by their respective officers, agents, employees

16  or representatives while actively engaged in the management of each Defendant's business or

17  affairs.

18      56.    Each of the Defendants named herein acted as the agent or joint venturer of or for

19  the other Defendants with respect to the acts, violations and common course of conduct alleged

20  herein. Each Defendant which is a subsidiary of a foreign parent acts as the sole United States

21  agent for SRAM made by its parent company.

22                    **CLASS ACTION ALLEGATIONS**

23      57.    Plaintiffs bring this suit as a class action pursuant Rules 23(b)(2) and 23(b)(3) of

24  the Federal Rules of Civil Procedure, on behalf of themselves and a Plaintiff Class ("the Class")

25  composed of and defined as follows:

26          All persons and entities residing in the United States who, from January 1,
           1998 through December 31, 2005, purchased SRAM in the United States
27          indirectly from the Defendants for their own use and not for resale.

28

Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

58.    This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a.    The Class is ascertainable and there is a well-defined community of interest among the members of the Class;

b.    Based upon the nature of the trade and commerce involved and the number of indirect purchasers of SRAM, Plaintiffs believe that the members of the Class number in the thousands, and therefore is sufficiently numerous that joinder of all Class members is not practicable;

c.    Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs indirectly purchased SRAM from one or more of the Defendants or their co-conspirators, and therefore Plaintiffs' claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class;

d.    The following common questions of law or fact, among others, exist as to the members of the Class:

i.    whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain or stabilize the prices of, or allocate the market for, SRAM;

ii.    whether the combination or conspiracy caused SRAM prices to be higher than they would have been in the absence of Defendants' conduct;

iii.    the operative time period of Defendants' combination or conspiracy;

13

CLASS ACTION COMPLAINT

iv.   whether Defendants' conduct caused injury to the business or property of Plaintiffs and the members of the Class;

v.    the appropriate measure of the amount of damages suffered by the Class;

vi.   whether Defendants' conduct violates Section 1 of the Sherman Act;

vii.  whether Defendants' conduct violates Sections 16720 and 17200 of the California Business and Professions Code;

viii. whether Defendants' conduct violates the antitrust, unfair competition, and consumer protection laws of the other states as alleged below; and

ix.   the appropriate nature of class-wide equitable relief.

e.    These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

f.    After determination of the predominate common issues identified above, if necessary or appropriate, the Class can be divided into logical and manageable subclasses;

g.    Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiffs have no interests that are antagonistic to other members of the Class and have retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent themselves and the Class;

h.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all damaged Class members is impractical.    The damages suffered by individual Class members are relatively small, given the expense and

14

burden of individual prosecution of the claims asserted in this litigation. Thus, absent the availability of class action procedures, it would not be feasible for Class members to redress the wrongs done to them. Even if the Class members could afford individual litigation, the court system could not.   Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system.   Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court;

    i.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole; and

    j.    In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

59.    The Claims in this case are also properly certifiable under the laws of the State of California, and of the other individual states identified below in the Fourth and Fifth Claims for Relief.

## NATURE OF TRADE AND COMMERCE

60.    Throughout the period of time covered by this Complaint, Defendants and their co-conspirators engaged in the business of marketing and selling SRAM throughout the United States. During each year of the Class Period, total sales of SRAM were in the billions of dollars.

61.    The market for the manufacture and sale of SRAM is conductive to the type of collusive activity alleged here.   That market is oligopolistic in nature. Samsung is the clear market leader.  According to the 2004 "Memory Market Backgrounder" available at its website, the shares of the leading SRAM manufacturers in 2003 were as follows:

1       Samsung    32.5%

2       Renesas    15.0%

3       Cypress    11.6%

4       Toshiba    7.9%

5       NEC    7.2%

6       Hynix    3.7%

7       Sony    4.1%

8       IBM Micro    2.7%

9       IDT    1.9%

10      ICSI    1.6%

11    62.    According to Samsung's 2006 "Memory Market Overview" available at its

12 website, the shares of the top SRAM manufacturers in 2004 and 2005 were as follows:

|          | 2004 | 2005 |
|----------|------|------|
| Samsung  | 34%  | 29%  |
| Micron   | 4%   | 15%  |
| NEC      | 11%  | 10%  |
| Renesas  | 6%   | 5%   |
| Toshiba  | 6%   | 5%   |

19    63.    Samsung notes in this same document that it holds 30% of the pseudo SRAM

20 market (SRAM used for mobile telephones) and that this segment is forecasted to grow by 33%

21 annually through 2008.

22    64.    The market for the manufacture and sale of SRAM is subject to high

23 manufacturing and technological barriers to entry. Efficient fabrication plants are large and

24 costly. SRAM is also subject to technological advances, so that firms within the industry must

25 undertake significant research and development expenses.

26    65.    The SRAM industry has also been subject to significant consolidation during the

27 Class Period. This trend is exemplified by the IDT's acquisition of Integrated Circuit Systems,

28

1   Inc. ("ICSI") in June of 2005. It is further exemplified by the merger in April of 2003 of the

2   semiconductor divisions of Hitachi Ltd. and Mitsubishi. The resultant entity, Renesas is one of

3   the leading manufacturers of SRAM.

4       66.    Beginning in 1998 and continuing through much of 2001, SRAM prices rose, due

5   in significant part to the effects of the industrywide collusion now being investigated by the DOJ.

6   During 2000 alone, the average selling price of SRAM in the United States increased by an

7   extraordinary 33%. While SRAM prices declined somewhat during part of 2001 and in part of

8   2002, the cartel created by defendants operated to mitigate those declines so that prices were still

9   at supracompetitive levels. As SRAM prices increased again in 2003 and subsequent years, the

10  collusive activity among the defendants kept those prices at supracompetitive levels.

11      67.    Manufacturers of electronic products and devices, and resellers of SRAM

12  modules, SRAM from wholesale distributors, who in turn purchase SRAM directly or indirectly

13  from the Defendants. These electronic products and devices and SRAM modules are then sold,

14  directly or indirectly, to consumers.

15      68.    California is the largest market in the world for SRAM and is the world wide

16  center of the PC industry and other industries that depend upon the SRAM markets. Statements

17  concerning the prices and market conditions for SRAM were disseminated by Defendants from

18  and into California on a regular and continuous basis.

19  **DEFENDANTS' ILLEGAL CONDUCT**

20      69.    On information and belief, in October of 2006, the Antitrust Division of the

21  United States Department of Justice ("DOJ") sent out subpoenas to 23 companies in connection

22  with an investigation of cartel activity in the SRAM industry during the period from January 1,

23  1998 through December 31, 2005. Those companies are: Samsung; Alliance; Cypress; ETron

24  Technology, Inc. ; Fujitsu; GSI ; Hitachi; Hynix; IBM; IBM Micro; IDT; ISSI; Micron;

25  Mitsubishi; NEC; Renesas; Sanyo; Seiko Epson; Sharp; Sony; STMicroelectronics; Toshiba; and

26  Winbond. A DOJ spokesperson was quoted as saying: "[t]he U.S. Department of Justice's

27  antitrust division is conducting an investigation regarding anti-competitive practices against chief

28

17

CLASS ACTION COMPLAINT

1    SRAM manufacturers." Several of these companies being investigated--Hynix and Samsung--

2    have already pled guilty to price-fixing in the DRAM industry and have paid substantial fines to

3    the DOJ for those unlawful activities ($300 million for Samsung and $185 million for Hynix).

4    Elpida Memory, Inc., a DRAM manufacturer created by Hitachi and NEC, two of the Defendants

5    here, was fined $84 million. Micron, another major SRAM manufacturer, was the amnesty

6    applicant in the DRAM price-fixing investigation.

7        70.     Several SRAM manufacturers--including Defendants Samsung, Mitsubishi,

8    Toshiba, Micron and Cypress--have publicly acknowledged the DOJ investigation and claim to

9    be cooperating with it. Toshiba referred in a press release dated October 17, 2006 to thee fact

10    that the DOJ appeared to be conducting an "industry-wide investigation." A spokesperson for

11    Cypress has been quoted as saying that "DOJ is looking at the market and the practices

12    involved." A Micron spokesperson effectively conceded that it was a target of the DOJ

13    investigation, albeit not the "main target".

14        71.     During the period from 1994 to 1997 (the period preceding the Class Period),

15    SRAM prices in the United States sharply declined and the industry fell from profitability into

16    steep losses. In 1997, Micron commenced an antidumping proceeding before the Court of

17    International Trade with respect to SRAM imports from Korea and Taiwan. Those proceedings

18    were not resolved in Micron's favor. However, these antidumping proceedings were a factor that

19    favored collusion. Antidumping cases encourage both importers and domestic producers to raise

20    prices—the former to avoid further antidumping claims and the latter to establish a high base

21    price against which to evaluate their future antidumping claims against importers. The DRAM

22    price-fixing conspiracy prosecuted by the DOJ also took place in a period following antidumping

23    claims brought by Micron.

24        72.     Beginning in 1998 and continuing through much of 2001, SRAM prices rose, due

25    in significant part to the effects of the industrywide collusion now being investigated by the DOJ.

26    During 2000 alone, the average selling price ("ASP") of SRAM in the United States increased by

27    33%--from an ASP of $3.93 in 1999 to approximately $5.24 in 2000. By comparison, the ASP

28

1  of SRAM in 1995-97 had dropped from $5.55 to $3.64. To the extent that SRAM prices declined

2  somewhat during part of 2001 and in part of 2002, the cartel created by Defendants and their co-

3  conspirators operated to mitigate those declines so that prices were still at supracompetitive

4  levels.   Indeed, SRAM prices experienced an upturn for part of 2002.   As SRAM prices

5  increased again in 2003 and subsequent years, the collusive activity among the Defendants and

6  their co-conspirators kept those prices at supracompetitive levels.

7      73.     Defendants and their co-conspirators have engaged in a contract, combination,

8  trust or conspiracy, the effect of which was to raise the prices at which they sold SRAM to

9  artificially inflated levels.

10     74.     Defendants, through their officers, directors and employees, effectuated the

11  aforesaid contract, combination, trust or conspiracy between themselves and their co-

12  conspirators by, among other things:

13         a.     participating in meetings and conversations, including through various

14                trade associations and committees, to discuss the prices of SRAM in the

15                United States;

16         b.     agreeing, during those meetings and conversations, to charge prices at

17                specified levels and otherwise to increase and maintain prices of SRAM

18                sold in the United States;

19         c.     issuing price announcements and quotations in accordance with the

20                agreements reached; and

21         d.     selling SRAM to various customers in the United States at non-

22                competitive prices.

23     75.     Defendants' contract, combination, trust or conspiracy was centered in, carried

24  out, effectuated and perfected mainly in the State of California.  Therefore, all members of the

25  Class, whether or not California residents, are entitled to recover under California law, as well as

26  the laws of their own states.

27                        **ACTIVE CONCEALMENT**

28

CLASS ACTION COMPLAINT

1    76.    Throughout and beyond the conspiracy, Defendants and their co-conspirators

2  affirmatively and actively concealed their unlawful conduct from Plaintiffs.  Defendants and

3  their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines

4  of their higher-level executives.  Defendants and their co-conspirators publicly provided pre-

5  textual and false justifications regarding their price increases.  Defendants and their co-

6  conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful

7  conduct and acts in furtherance thereof, and actively concealed their activities through various

8  other means and methods to avoid detection.  Plaintiffs did not discover, and could not have

9  discovered through the exercise of reasonable diligence, that Defendants and their co-

10  conspirators were violating the antitrust laws as alleged herein until shortly before this class

11  action litigation was commenced.

12    77.    As a result of the active concealment of the conspiracy by Defendants and their

13  co-conspirators, any and all applicable statutes of limitations otherwise applicable to the

14  allegations herein have been tolled.

15                                **VIOLATIONS ALLEGED**

16                                **First Claim for Relief**

17                    **(Violation of Section 1 of the Sherman Act)**

18    78.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

19  allegation set forth in the preceding paragraphs of this Complaint.

20    79.    Beginning at a time presently unknown to Plaintiffs, but at least as early as

21  January 1, 1998 and continuing through at least December 31, 2005, the exact dates being

22  unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement,

23  understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or

24  stabilize prices for SRAM in the United States, in violation of Section 1 of the Sherman Act, 15

25  U.S.C. § 1.

26    80.    In formulating and carrying out the alleged agreement, understanding, and

27  conspiracy, the Defendants and their co-conspirators did those things that they combined and

28                                        20

1  conspired to do, including but not limited to the acts, practices, and course of conduct set forth

2  above, and the following, among others:

3          a.    To fix, raise, maintain and stabilize the price of SRAM;

4          b.    To allocate markets for SRAM among themselves;

5          c.    To submit rigged bids for the award and performance of certain SRAM

6                contracts; and

7          d.    To allocate among themselves the production of SRAM.

8     81.    The combination and conspiracy alleged herein has had the following effects,

9  among others:

10         a.    Price competition in the sale of SRAM has been restrained, suppressed,

11               and/or eliminated in the United States;

12         b.    Prices for SRAM sold by Defendants and their co-conspirators have been

13               fixed, raised, maintained and stabilized at artificially high, non-

14               competitive levels throughout the United States; and

15         c.    Those who purchased SRAM directly or indirectly from Defendants and

16               their co-conspirators have been deprived of the benefits of free and open

17               competition.

18     82.    Plaintiffs have been injured and will continue to be injured in their business and

19  property by paying more for SRAM purchased indirectly from the Defendants and their co-

20  conspirators than they would have paid and will pay in the absence of the combination and

21  conspiracy, including paying more for personal computers and other products in which SRAM is

22  a component as a result of higher prices paid for SRAM by the manufacturers of those products.

23     83.    Plaintiffs and the class are entitled to an injunction against Defendants, preventing

24  and restraining the violations alleged herein.

25

26

27

28
                                          21
                                 CLASS ACTION COMPLAINT

## Second Claim for Relief

### (Violation of the California Cartwright Act)

84.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

85.    Defendants' contract, combination, trust or conspiracy was centered in, carried out, effectuated and perfected mainly within the State of California, and Defendant's conduct within California injured all members of the Class throughout the United States.  Therefore, this claim for relief under California law is brought on behalf of all members of the Class, whether or not they are California residents.

86.    Beginning at a time presently unknown to Plaintiffs, but at least as early as January 1, 1998, and continuing thereafter at least up to and including at least December 31, 2005, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professional Code.  Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of, and allocate markets for, SRAM at supra-competitive levels.

87.    The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for, SRAM.

88.    For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and the following:

    a.    to fix, raise, maintain and stabilize the price of SRAM;

    b.    to allocate markets for SRAM amongst themselves;

22

CLASS ACTION COMPLAINT

1             c.     to submit rigged bids for the award and performance of certain SRAM

2                 contracts; and

3             d.     to allocate amongst themselves the production of SRAM.

4       89.     The combination and conspiracy alleged herein has had, inter alia, the following

5 effects:

6             a.     price competition in the sale of SRAM has been restrained, suppressed

7                 and/or eliminated in the State of California and throughout the United

8                 States;

9             b.     prices for SRAM sold by Defendants and their co-conspirators have been

10                fixed, raised, maintained and stabilized at artificially high, non-

11                 competitive levels in the State of California and throughout the United

12                 States; and

13             c.     those who purchased SRAM from Defendants and their co-conspirators

14                have been deprived of the benefit of free and open competition.

15       90.     Plaintiffs and the other members of the Class paid supra-competitive, artificially

16 inflated prices for SRAM.

17       91.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

18 the members of the Class have been injured in their business and property in that they paid more

19 for SRAM than they otherwise would have paid in the absence of Defendants' unlawful conduct.

20 As a result of Defendants' violation of Section 16720 of the California Business and Professions

21 Code, Plaintiffs seek treble damages and the costs of suit, including reasonable attorneys' fees,

22 pursuant to Section 16750(a) of the California Business and Professions Code.

23 **Third Claim for Relief**

24 **(Violation of the California Unfair Competition Law)**

25       92.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

26 allegation set forth in the preceding paragraphs of this Complaint.

27

28

CLASS ACTION COMPLAINT

93.    Defendants' business acts and practices were centered in, carried out, effectuated and perfected mainly within the State of California, and Defendant's conduct within California injured all members of the Class throughout the United States. Therefore, this claim for relief under California law is brought on behalf of all members of the Class, whether or not they are California residents.

94.    Beginning on a date unknown to Plaintiffs, but at least as early as January 1, 1998, and continuing thereafter at least up through and including December 31, 2005, Defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, et seq. of the California Business and Professions Code, by engaging in the acts and practices specified above.

95.    This Claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

96.    The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common continuous and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, et seq., including, but not limited to, the following:

      a.    The violations of Section 1 of the Sherman Act, as set forth above;

      b.    The violations of Section 16720, *et seq.*, of the California Business and Professions Code, set above;

      c.    Defendants' acts, omissions, misrepresentations, practices and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair,

CLASS ACTION COMPLAINT

1    unconscionable, unlawful or fraudulent;

2    d.    Defendants' act and practices are unfair to consumers of SRAM in the

3    State of California and throughout the United States, within the meaning

4    of Section 17200, California Business and Professions Code; and

5    e.    Defendants' acts and practices are fraudulent or deceptive within the

6    meaning of Section 17200 of the California Business and Professions

7    Code.

8    97.    Plaintiffs and each of the Class members are entitled to full restitution and/or

9    disgorgement of all revenues, earnings, profits, compensation and benefits which may have been

10   obtained by Defendants as a result of such business acts or practices.

11   98.    The illegal conduct alleged herein is continuing and there is no indication that

12   Defendants will not continue such activity into the future.

13   99.    The unlawful and unfair business practices of Defendants, and each of them, as

14   described above, have caused and continue to cause Plaintiffs and the members of the Class to

15   pay supra-competitive and artificially-inflated prices for SRAM.  Plaintiffs and the members of

16   the class suffered injury in fact and lost money or property as a result of such unfair competition.

17   100.    The conduct of Defendants as alleged in this Complaint violates Section 17200 of

18   the California Business and Professions Code.

19   101.    As alleged in this Complaint, Defendants and their co-conspirators have been

20   unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.

21   Plaintiff and the members of the Class are accordingly entitled to equitable relief including

22   restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits

23   which may have been obtained by Defendants as a result of such business practices, pursuant to

24   the California Business and Professions Code, Sections 17203 and 17204.

25   **Fourth Claim for Relief**

26   **(Violation of State Antitrust and Unfair Competition Laws)**

27   102.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

28

1    allegation set forth in the preceding paragraphs of this Complaint.

2        103.    By reason of the foregoing, defendants have entered into agreements in restraint

3    of trade in violation of Alabama Code §§8-10-1 et seq.

4        104.    By reason of the foregoing, defendants have entered into agreements in restraint

5    of trade in violation of Arizona Revised Stat. §§44-1401 et seq.

6        105.    By reason of the foregoing, defendants have entered into agreements in restraint

7    of trade in violation of California Bus. & Prof. Code §§16700 et seq. and Cal. Bus. & Prof. Code

8    §§17200 et seq.

9        106.    By reason of the foregoing, defendants have entered into agreements in restraint

10    of trade in violation of District of Columbia Code Ann. §§28-4503 et seq.

11        107.    By reason of the foregoing, defendants have entered into agreements in restraint

12    of trade in violation of Iowa Code §§553.1 et seq.

13        108.    By reason of the foregoing, defendants have entered into agreements in restraint

14    of trade in violation of Kansas Stat. Ann. §§50-101 et seq.

15        109.    By reason of the foregoing, defendants have entered into agreements in restraint

16    of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 et seq.

17        110.    By reason of the foregoing, defendants have entered into agreements in restraint

18    of trade in violation of Michigan Comp. Laws. Ann. §§445.773 et seq.

19        111.    By reason of the foregoing, defendants have entered into agreements in restraint

20    of trade in violation of Minnesota Stat. §§325D.52 et seq.

21        112.    By reason of the foregoing, defendants have entered into agreements in restraint

22    of trade in violation of Mississippi Code Ann. §75-21-1 et seq.

23        113.    By reason of the foregoing, defendants have entered into agreements in restraint

24    of trade in violation of Nebraska Rev. Stat. §§59-801 et seq.

25        114.    By reason of the foregoing, defendants have entered into agreements in restraint

26    of trade in violation of Nevada Rev. Stat. Ann. §§598A et seq.

27

28

CLASS ACTION COMPLAINT

115.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§57-1-1 et seq.

116.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§75-1 et seq.

117.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§51-08.1-01 et seq.

118.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of the Pennsylvania common law.

119.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§37-1 et seq.

120.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§47-25-101 et seq.

121.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§2453 et seq.

122.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of West Virginia §§47-18-1 et seq.

123.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§133.01 et seq.

124.   Class Members in each of the states listed above paid supra-competitive, artificially inflated prices for SRAM. As a direct and proximate result of Defendants' unlawful conduct, such members of the Class have been injured in their business and property in that they paid more for SRAM than they otherwise would have paid in the absence of Defendants' unlawful conduct.

### Fifth Claim for Relief

### (Violation of State Consumer Protection and Unfair Competition Laws)

125.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

27

CLASS ACTION COMPLAINT

126.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

127.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. §§45.50.471 et seq.

128.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code §4-88-101 et seq.

129.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of California Bus. & Prof. Code §17200 et seq.

130.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code §28-3901 et seq.

131.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. §501.201 et seq.

132.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. §480 et seq.

133.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code §48-601 et seq.

134.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kansas Stat. §50-623 et seq.

135.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Louisiana Rev. Stat. §51:1401 et seq.

136.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Maine Rev. Stat. §207 et seq.

137.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Montana Code §30-14-101 et seq.

138.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nebraska Rev. Stat. §59-1601 et seq.

139.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. §57-12-1 et seq.

140.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New York Gen. Bus. Law §349 et seq.

141.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. §75-1.1 et seq.

142.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Oregon Rev. Stat. §646.605 et seq.

143.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. §6-13.1-1 et seq.

144.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of South Carolina Code Laws §39-5-10 et seq.

145.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code §13-11-1 et seq.

146.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont §2451 et seq.

147.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code §46A-6-101 et seq.

148.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyoming Stat. §40-12-105.

149.   Class Members in the states listed above paid supra-competitive, artificially inflated prices for SRAM. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the members of the Class have been injured in their business and property in that they paid more for SRAM than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## Sixth Claim for Relief

### (Unjust Enrichment and Disgorgement of Profits)

150.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

151.    Defendants have been unjustly enriched through overpayments by Plaintiffs and Class members and the resulting profits.

152.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiffs and Class members.

153.    Plaintiffs seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

A.    That the Court determine that the Sherman Act, state antitrust law, and  state consumer protection and/or unfair competition law claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

B.    That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

a.    A restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Claim for Relief;

b.    An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust laws identified in the Second and Fourth Claims for Relief herein;

c.    Violations of the state consumer protection and unfair competition laws identified in the Third and Fifth Claims for Relief herein; and

d.    Acts of unjust enrichment as set forth in the Sixth Claim for Relief herein.

C.     That Plaintiffs and the Class recover damages, as provided by federal and state antitrust laws, and that a joint and several judgment in favor of Plaintiffs and the Class be entered against the Defendants in an amount to be trebled in accordance with such laws;

D.     That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner: (1) continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect; and (2) communicating or causing to be communicated to any other person engaged in the sale of SRAM, information concerning bids of competitors;

E.     That Plaintiffs be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

F.     That Plaintiffs and members of the Class be awarded pre- and post-judgment interest, and that that interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

G.     That Plaintiffs and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

///
///
///
///
///
///
///
///

31

CLASS ACTION COMPLAINT

1    H.    That Plaintiffs and members of the Class have such other, further, and different

2    relief as the case may require and the Court may deem just and proper under the circumstances.

3

4    DATED: October 18 2006          Respectfully submitted,

5

6                                     By _____

7                                     FRANCIS O. SCARPULLA (Cal. S.B. 41059)

8                                     CRAIG C. CORBITT (Cal. S.B. 83251)
                                      JUDITH A. ZAHID (Cal. S.B. 215418)

9                                     MATTHEW R. SCHULTZ (Cal. S.B. 220641)
                                      ZELLE, HOFMANN, VOELBEL, MASON &

10                                    GETTE LLP
                                      44 Montgomery Street, Suite 3400

11                                    San Francisco, CA 94104
                                      Telephone:    (415) 693-0700

12                                    Facsimile:    (415) 693-0770
                                      fscarpulla@zelle.com

13                                    ccorbitt@zelle.com

14
                                      MICHAEL P. LEHMANN (Cal. S.B. 77152)

15                                    THOMAS P. DOVE (Cal. S.B. 51921)
                                      CHRISTOPHER L. LEBSOCK (Cal. S.B.

16                                    184546)
                                      FURTH LEHMANN & GRANT LLP

17                                    225 Bush Street, 15th Floor

18                                    San Francisco, CA  94104
                                      Telephone:    (415) 433-2070

19                                    Facsimile:    (415) 982-2076
                                      Michael@Furth.com

20

21                                    JOSEPH D. COOPER (Cal. S.B. 53015)
                                      TRACY R. KIRKHAM (69913)

22                                    COOPER & KIRKHAM, P.C.
                                      655 Montgomery Street, 17th Floor

23                                    San Francisco, CA  94111
                                      Telephone:    (415) 788-3030

24                                    Facsimile:    (415) 882-7040
                                      coopkirk@aol.com

25

26

27

28                                    32
                                ─────────────────────────
                                 CLASS ACTION COMPLAINT

ALAN STEYER
STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP
One California Street, Third Floor
San Francisco, CA 94104
Telephone:     (415) 421-3400
Facsimile:     (415) 421-2234
asteyer@steyerlaw.com

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury for all issues so triable.

DATED: October 1?, 2006          Respectfully submitted,


By _____

FRANCIS O. SCARPULLA (Cal. S.B. 41059)
CRAIG C. CORBITT (Cal. S.B. 83251)
JUDITH A. ZAHID (Cal. S.B. 215418)
MATTHEW R. SCHULTZ (Cal. S.B. 220641)
ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:     (415) 693-0700
Facsimile:     (415) 693-0770
fscarpulla@zelle.com
ccorbitt@zelle.com

MICHAEL P. LEHMANN (Cal. S.B. 77152)
THOMAS P. DOVE (Cal. S.B. 51921)
CHRISTOPHER L. LEBSOCK (Cal. S.B. 184546)
FURTH LEHMANN & GRANT LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
Telephone:     (415) 433-2070
Facsimile:     (415) 982-2076
Michael@Furth.com

CLASS ACTION COMPLAINT

JOSEPH D. COOPER (Cal. S.B. 53015)
TRACY R. KIRKHAM (69913)
COOPER & KIRKHAM, P.C.
655 Montgomery Street, 17th Floor
San Francisco, CA  94111
Telephone:     (415) 788-3030
Facsimile:     (415) 882-7040
coopkirk@aol.com

ALAN STEYER
STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP
One California Street, Third Floor
San Francisco, CA  94104
Telephone:     (415) 421-3400
Facsimile:     (415) 421-2234
asteyer@steyerlaw.com

3166255v1

CLASS ACTION COMPLAINT